UNITED STATES DISTRICT COURT
Northern District of Iowa
Western Division

| DANELLE SULLIVAN, | CASE NO. 5:18-cv-4004 |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT & JURY DEMAND** |
| ASPEN API INC., a Delaware Corporation, | |
| Defendant. | |

COMES NOW Plaintiff Danelle Sullivan and hereby set forth the following causes of action against Defendant:

## JURISDICTIONAL ALLEGATIONS

1. This action is based on the provisions of 42 U.S.C. Section 12101, *et seq.*, commonly referred to as the Americans with Disabilities Act (ADA) of 1990, and all amendments thereto, and Title VII of the Civil Rights Act of 1964 and all amendments thereto. Subject matter jurisdiction is conferred upon this Court by 42 U.S.C. 12117(a), and 42 U.S.C. 2000e-5(f). All claims set forth below are also made pursuant to the Iowa Civil Rights Act, Iowa Code Chapter 216, and this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

## VENUE

2. Venue is proper pursuant to 28 U.S.C. Section 1391(b) because it is brought in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

1

## PARTIES

3. Plaintiff Danelle Sullivan (hereinafter "Sullivan") is, and was at all times material hereto, a citizen of the United States, a resident of Correctionville, Woodbury County, Iowa and over twenty-one (21) years of age.

4. Defendant Aspen API, Inc. (hereinafter "Aspen") is, and was at all times material hereto, a Delaware corporation licensed to do business in the State of Iowa and doing business in Woodbury County, Iowa.

## CONDITIONS PRECEDENT

5. Sullivan timely filed a Complaint of Discrimination with the Iowa Civil Rights Commission and the Equal Opportunity Commission on January 23, 2017 (Exhibit "A" attached hereto and is incorporated by reference hereto as if fully set forth herein).

6. Sullivan was issued a Notice of Right to Sue from the Equal Employment Opportunity Commission on October 24, 2017 (Exhibit "B" attached hereto and incorporated by reference hereto as if fully set forth herein).

7. Sullivan was issued Notice of Right to Sue from the Iowa Civil Rights Commission on November 22, 2017 (Exhibit "C" attached hereto and incorporated by reference hereto as if fully set forth herein).

8. The Complaint is filed with the Court within ninety (90) days of receipt of the Notice of the Right to Sue letters referenced above.

9. Pursuant to Local Rule 10.1(h) personal data identifies in the attached Exhibits A-C have been partially redacted.

## GENERAL ALLEGATIONS

10. At all times material hereto, Aspen was an "Employer" as defined by 29 U.S.C. 630(b) and 42 U.S.C. 12111(5), and Sullivan was at all times herein set forth an "Employee"

within the definition of 29 U.S.C. 630(f) and a qualified individual with a disability within the definition of 42 U.S.C. 12111(8). Aspen was also an "Employer" and Sullivan an "Employee" pursuant to Title VII and Iowa Code Chapter 216.

11. Sullivan was hired by a predecessor entity of Defendant on September 5, 1995.

12. Sullivan was initially hired as a Laboratory Technician. In 2003, Sullivan was promoted to Laboratory Technician II.

13. Sullivan's Principal Duties and Responsibilities were database administration, documentation management, and quality assurance (QA) and quality control (QC) duties. These included releasing or rejecting product for shipment, inspecting shipping containers, performing lab analysis of product, and calibrating production equipment and instruments.

14. On August 4, 2016, Sullivan was diagnosed with a vocal cord dysfunction and was hospitalized on three occasion in 2016 (March, May and July). This condition made Sullivan sensitive to heat, humidity, and odors. Exposure to these causes her throat to shut, preventing her from speaking and eventually interfering with her breathing. In March of 2016, Sullivan was off work for two weeks, after which she worked half-days for two weeks before returning to her normal duties. In May 2016, Sullivan was hospitalized overnight and missed one day of work. Sullivan was then off work from July 21, 2016 until September 15, 2016. Sullivan notified Aspen of her diagnosis on August 11, 2016.

15. Sullivan provided Aspen with a note from her doctor dated September 12, 2016, stating that she could return to work half-days starting September 13, and return to work full-time starting September 19, 2016. The note went on to state that Sullivan should avoid working in the production room, and that this restriction would be reassessed in six months. Sullivan also provided Aspen with a note from a speech pathologist with Mayo Clinic dated September 8,

2016 which asked for Sullivan to be excused from the production room indefinitely, but that this restriction would be reassessed in six months.

16. Aspen approved Sullivan's return to work on September 15, 2016 with the restrictions and she worked half-days until October 2, after which she worked full-time until November 7 without any further incident.

17. Due to Sullivan's absences from work, she exhausted her paid time off by October 20, 2016. Sullivan contacted her supervisors and asked if it was acceptable for her to be absent without pay for any future doctor's appointments. Aspen replied that she needed to work at least 30 hours per week in order to maintain her status as a full-time employee under the Affordable Care Act. Provided that she was able to keep her worked hours over 30 per week, there would be no change in her employment status. Aspen went on to tell her that they would consider her to have been full-time for the year provided she worked at least 330 hours for the remaining 11 weeks of the year. Sullivan missed three days of work between October 25-27 for doctor's appointments.

18. On October 27, 2016, Aspen requested an updated note from Sullivan's doctor which stated: "Due to your changing health conditions, and so that Aspen has the most up to date evaluation, please obtain and submit a new Doctor's note indicating any restrictions of work activity. I have attached a form used by Extensis for this purpose. Please use that form if possible."

19. On November 7, 2016 Aspen discussed the possibility of a voluntary separation agreement with Sullivan. Sullivan told Aspen she believed she was doing her job and completing all tasks that were assigned to her. The meeting ended with no resolution or accommodation for Sullivan, and she was instructed she would not be able to return to work until she had a note from her doctor either releasing her to perform her job duties without

4

accommodation or specifying what accommodation Sullivan needed to perform her job functions.

20. On November 9, 2016, Aspen emailed Sullivan a draft copy of the proposed severance agreement.

21. Sullivan returned to work on November 23, 2016.

22. Sullivan had additional absences due to her heath until January 25, 2017. On January 25, 2017, Aspen sent Sullivan a letter information her that her continued absence was creating an undue hardship and was seeking clarification regarding her ability and intention to return to work.

23. Aspen kept changing the acceptance criteria in order for Sullivan to return to work and the constant change of requirements is discriminatory.

24. Aspen terminated Sullivan's employment on February 22, 2017.

## COUNT I
## VIOLATION OF AMERICANS WITH DISABILITIES ACT AGAINST DEFENDANT

25. Plaintiff realleges paragraphs 1-24 as if fully set forth herein.

26. Aspen's actions in failing to accommodate Sullivan and terminating Sullivan's employment because of her physical disabilities constituted illegal discrimination against a qualified individual with a disability and therefore violated 42 U.S.C. 12112.

27. At all times material hereto, Sullivan had a record of having a physical impairment because of the complications and restrictions related to her vocal cord dysfunction, and Aspen's actions in failing to accommodate Sullivan and terminating Sullivan's employment because of her physical disabilities constituted illegal discrimination in violation of 42 U.S.C. 12112.

28. At all times material hereto, Aspen regarded Sullivan as having a physical impairment because of the complications and restrictions related to her vocal cord dysfunction,

and Aspen's actions in failing to accommodate Sullivan, and terminating Sullivan's employment because it regarded her as having a physical impairment constituted illegal discrimination in violation of 42 U.S.C. 12112.

29. Aspen made no effort and failed to accommodate Sullivan's disability in violation of 42 U.S.C. 12112(b)(5).

30. Aspen's failure and refusal to accommodate Sullivan's disability, and terminating Sullivan's employment because of her physical disabilities, were intentional or in reckless disregard of Sullivan's rights, and thereby gives rise to punitive damages as provided by law.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendant Aspen, declaring the conduct engaged in by Aspen to be in violation of Sullivan's rights and award damages as follows:

   a. Plaintiff be awarded damages to compensate, reimburse and make whole Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendant's illegal conduct including but not limited to back pay with interest, front pay, benefits, training, promotions and seniority;

   b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and other non-pecuniary losses;

   c. Plaintiff be awarded punitive damages due to the intentional or reckless nature of the conduct of Defendant;

   d. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees; and

   e. Such other and further relief as the Court may deem proper.

## COUNT II
## SEXUAL DISCRIMINATION

31. Plaintiff realleges paragraphs 1-30 as if fully set forth herein.

32. Plaintiff is a female.

33. The site has not hired a full-time female employee in 12 years. About 15 full-time male employees have been hired since that time.

34. Production and Maintenance Departments (all with male employees) are allowed to have overtime. The Quality Unit were instructed to have no overtime.

35. 7 out of 10 hourly employees in 2009 received a wage increase due to Merck alignment (100% of those 7 that received the raise were males and 100% of those who did not receive a wage increase with Merch alignment were females).

36. In 2015, 6 or of 9 hourly employees received a promotion and wage increase due to a project which double the output of the plant. 100% of those 6 are males that did receive the promotion and/or wage increase and 100% of those who did not receive a promotion and/or wage increase were females. The project doubled the output of the entire plant which meant more work for everyone (male and female).

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendant Aspen, declaring the conduct engaged in by Aspen to be in violation of Sullivan's rights and award damages as follows:

   a. Plaintiff be awarded damages to compensate, reimburse and make whole Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendant's illegal conduct including but not limited to back pay with interest, front pay, benefits, training, promotions and seniority;

   b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and other non-pecuniary losses;

   c. Plaintiff be awarded punitive damages due to the intentional or reckless nature of the conduct of Defendant;

   d. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees; and

   e. Such other and further relief as the Court may deem proper.

## COUNT III
## RETALIATION

37. Plaintiff repleads paragraphs 1-36 as if fully set forth herein.

7

Case 5:18-cv-04004-LRR   Document 1   Filed 01/19/18   Page 7 of 9

38. Aspen kept changing the acceptance criteria in order for Sullivan to return to work and the constant change of requirements is discriminatory.

39. Aspen rejected Sullivan's restrictions and made no resolution or accommodation for Sullivan. Sullivan was ultimately instructed that she would not be able to return to work until she had a note from her doctor either releasing her to perform her job duties without accommodation or specifying what accommodation Sullivan needed to perform her job functions.

40. Sullivan objected to the discriminatory actions stated above, including direct objections to her supervisors, and also filed a civil rights complaint.

41. Because of Sullivan's opposition to Aspen's unlawful employment practice, Sullivan's restrictions were not accommodated and she was ultimately terminated.

42. Aspen's violation of Sullivan's rights was willful.

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendant, declaring the conduct engaged in by Defendant to be in violation of Plaintiff's rights and award damages as follows:

    a. Plaintiff be awarded damages to cpmensate, reimburse and make whole the Plaintiff for all the past and present benefits Plaintiff should have received had it not been for Defendant's illegal conduct including but not limited to back pay with interest, front pay, benefits, training, promotions and seniority;

    b. Plaintiff be awarded compensation for past and future suffering, emotional distress, loss of enjoyment of life and other non-pecuniary losses;

    c. Plaintiff be awarded liquidated damages due to the willful nature of the conduct of Defendant.

    d. Plaintiff be awarded punitive damages in an amount appropriate to punish Defendant for willful and malicious misconduct and necessary to deter Defendant from engaging in such misconduct in the future;

    e. Plaintiff be awarded the costs and expenses of this action and award Plaintiff reasonable attorney's fees;

f.  Plaintiff be awarded interest provided by law; and

g.  Such other and further relief as the Court may deem proper.

## JURY DEMAND

COMES NOW Plaintiff and demands a trial by jury of all issues.

Respectively submitted this 19th day of January, 2018.

>MUNGER, REINSCHMIDT & DENNE, L.L.P.
>
>By: */s/ Stanley E. Munger*
>    Stanley E. Munger (AT0005583)
>600 Fourth Street, Suite 303
>P. O. Box 912
>Sioux City, IA  51102
>(712) 233-3635
>(712) 233-3649 (fax)
>Attorney E-mail: stanmunger@mrdlaw.net
>ATTORNEYS FOR PLAINTIFF

Sullivan, danelle/pleadings/complaint